ST. LOUIS SCIENCE FICTION LIMITED, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
St. Louis Science Fiction, Ltd. v. Commissioner
Docket No. 31878-83X.
United States Tax Court
T.C. Memo 1985-162; 1985 Tax Ct. Memo LEXIS 469; 49 T.C.M. (CCH) 1126; T.C.M. (RIA) 85162; April 2, 1985. James H. White, for the petitioner. Jeremy L. Nowak, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Chief Judge: Respondent determined that petitioner does not quality for exemption from Federal income tax under section 501(a)[1] as an organization described in section 501(c)(3). The prerequisites for declaratory judgment having been satisfied, [2] petitioner has pursuant to section 7428 invoked the jurisdiction of this Court. The issue for our decision is whether petitioner is engaged primarily in activities which accomplish exempt purposes within the meaning of section 501(c)(3). *471 This case was submitted on a stipulated administrative record under Rules 122 and 217. [3] The stipulated record, which is assumed to be true for the purpose of this proceeding, is incorporated herein by this reference. The pertinent facts are summarized below. St. Louis Science Fiction Limited (petitioner) was incorporated on April 12, 1979, under the General Not for Profit Corporation Law of the State of Missouri. At the time the petition was filed in this case, petitioner's principal office was located in Clayton, Missouri. Petitioner's articles of incorporation originally stated its purpose as follows: To promote the reading, writing, viewing and appreciation of science fiction and fantasy and all other legal powers permitted general not for profit corporations. On March 30, 1982, petitioner filed a Form 1023, Application for Recognition of Exemption under section 501(c)(3), with the District Director of Internal Revenue in St. Louis, Missouri. In regard to this application, respondent requested additional information from petitioner on April 7, 1982. Petitioner supplied the information *472 requested and also amended its charter on June 9, 1982, to restate its purpose as follows: all legal powers permitted general not-for-profit corporations which are charitable, literary, educational, or scientific within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1954 (or the corresponding provision of any future United States Internal Revenue Law), including to promote and stimulate interest in speculative fiction (in print, movie and video form) and art and related activities. Thereafter, respondent referred petitioner's application to its national office on July 1, 1982. On August 16, 1983, respondent issued to petitioner a final adverse ruling letter, affirming a prior adverse determination of January 18, 1983, which denied petitioner tax-exempt status for the following reasons: You are not operated exclusively for exempt purposes within the meaning of section 501(c)(3) of the Internal Revenue Code, and you are operated, in part, for the private benefit of artists and dealers. Also, you are operated in furtherance of substantial nonexempt commercial, and social and entertainment purposes. Therefore, you *473 do not qualify for exemption from Federal income tax under section 501(c)(3) of the Code. Petitioner is controlled by a board of directors, the members of which are nominated and elected by the directors in office at the time. The St. Louis Science Fiction Society, another science fiction group, also usually nominates two of the members of petitioner's board. Petitioner's principal activity is conducting an annual science fiction convention, called Archon, in St. Louis. The convention is widely advertised and open to the public. This was petitioner's sole activity until June 1982, when it participated in the Space Week program at a local planetarium, by providing an author to conduct the science fiction component of the planetarium's program. Petitioner also furnished a display on science fiction literature to the St. Louis Public Library during the summer of 1982. Archon generally lasts from Friday evening to Sunday afternoon. At each convention, science fiction authors and personalities are present at readings and panel discussions. At the 1980 convention, other activities included a masquerade party, a pool party, [4] a sing-a-long program, a 24-hour video room, a 24-hour *474 gaming room, movies, an art show and auction, and a huckster's room. [5] 868 persons attended the 1980 convention. Panel discussion topics included science fiction and fantasy films; advice on how to start a science fiction magazine; the psychology of horror; future worlds; and lobbying for the space program. Films shown by petitioner included "2001: A Space Odyssey;" "Hardware Wars" (a spoof on "Star Wars"); "'Star Trek' Bloopers;" and "Moon Zero Two" (described in the 1980 convention program as "'the first Outer Space Western;' . . . and hopefully the last"). Petitioner's sources of income are convention admission fees, table rental charges, art sales commissions, program advertising charges, and a small amount of contributions. Net revenue for the 1980 convention is computed *475 as follows: [6]
convention admission fees
$7,403.11
huckster tables
645.00
brunch tickets
1,184.75
program book ads
108.00
contributions
5.75
art show revenues
$2,919.68 payments to artists
(2,376.41)
net commissions
543.27 supplies
(52.10)
491.17 491.17
net revenue
[7] $9,837.78
The 1981 convention [8] was attended by 1,231 people. It retained the art show and auction, huckster's room, video room, masquerade party, and gaming room. There was also a "dead dog" party. [9] Panel *476 discussion topics included: "How to Enjoy Your First Science Fiction Convention;" "Buying and Selling Science Fiction;" "What's Wrong With Science Fiction Fandom;" "What's So Horrible About Horror;" "The Reality of Magic;" "The Personal Apocalypse: The Relationship of Science Fiction Fantasy to Role Playing Games;" and "I'm Doing This for Egoboo?!!" Net revene at the 1981 convention was computed as follows: registration
$11,420.85 huckster tables 1981
911.00 advances 1982
596.00 program book ads
260.00 contributions
.37 art show revenues
3,607.34 payments to artists
(2,818.35)
net commissions
788.99 supplies
(1,174.46)
(385.47)
(385.47)
net revenue
[10] $12,802.75 *477 Science fiction and fantasy art work is sold at the conventions by non-commercial artists. Petitioner retains a 15 percent commission. In 1980, petitioner's profit from the art show was $491.17. Payments to the artists amounted to $2,376.41. In 1981, the art show operated at a loss of $385.47. The artists received $2,818.35. In 1982, the artists' proceeds were $4,800. Petitioner maintains that it qualifies for tax-exempt status because it is operated exclusively for educational purposes. Petitioner contends that the activities that respondent argues are recreational are really part of petitioner's overall educational purpose. It refers us to several of respondent's revenue rulings in support of its contention that it is tax-exempt. We note that these rulings do not serve as binding legal precedent in our disposition of this case, nor do we find any of them to be controlling. Respondent does not contest the fact that petitioner was organized exclusively for educational purposes. Respondent does, however, contend that petitioner is not operated exclusively for educational purposes. Respondent argues that many of petitioner's activities further substantial social and recreational *478 purposes. Respondent contends further that petitioner is operated for the substantial private purpose of benefiting the artists and hucksters who sell at its conventions. Accordingly, respondent asserts that petitioner is not entitled to tax-exempt status. For the reasons set forth below, we agree with respondent. Section 501(a) provides tax-exempt status to organizations described in section 501(c)(3). Section 501(c)(3) provides as follows: (c) LIST OF EXEMPT ORGANIZATIONS.--The following organizations are referred to in subsection (a): * * * (3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of *479 the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office. In order to be exempt, an organization must be both organized and operated exclusively for an educational purpose. Sec. 1.501(c)(3)-1(a), Income Tax Regs. The presence of a single noneducational purpose, if substantial in nature, will make the organization ineligible for the exemption, regardless of the number or importance of truly educational purposes. Better Business Bureau v. United States,326 U.S. 279, 283 (1945), Copyright Clearance Center, Inc. v. Commissioner,79 T.C. 793, 804 (1982). The burden of proof is on petitioner to show that respondent's determination that petitioner has failed the organizational and operational test is incorrect. Rule 217(c)(2)(i); Hancock Academy of Savannah, Inc. v. Commissioner,69 T.C. 488 (1977). *480 We need address only the question of whether or not petitioner has satisfied the operational test of section 1.501(c)(3)-1(c), Income Tax Regs., since respondent does not contend that petitioner has failed the organizational test. To pass the operational test, petitioner must show that its activities accomplish one or more exempt purposes as specified in section 501(c)(3). Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs. The operational test focuses on the purpose of an activity, not its nature. Federation Pharmacy Services v. Commissioner,72 T.C. 687 (1979), affd. 625 F.2d 804 (8th Cir. 1980). However, one activity may be exempt and nonexempt, and in such situations it is necessary to determine whether the nonexempt purposes are more than insubstantial. Christian Stewardship Assistance, Inc. v. Commissioner,70 T.C. 1037 (1978). Whether an organization satisfies the operational test is a question of fact. Goldsboro Art League, Inc. v. Commissioner,75 T.C. 337, 343 (1980). *481 "Educational" is included among the purposes that are exempt from taxation. Sec. 501(c)(3); sec. 1.501(c)(3)-1(d)(1)(i)(f), Income Tax Regs. Pursuant to section 1.501(c)(3)-1(d)(3)(i), Income Tax Regs., the term "educational" as used in section 501(c)(3) relates to the following: (a) The instruction or training of the individual for the purpose of improving or developing his capabilities; or (b) The instruction of the public on subjects useful to the individual and beneficial to the community. We have no doubt that some of petitioner's more serious panel discussions, e.g., "The Personal Apocalypse: The Relationship of Science Fiction/Fantasy to Role Playing Games," served an educational purpose. However, based upon our examination of the entire administrative record, we conclude that social and recreational purposes constituted a substantial portion of petitioner's activities. In the 1981 convention program, petitioner addressed its attendees as follows: This year at Archon there is something for everyone: expanded *482 gaming facilities with numerous tournaments, a huge movie room, two video screens in the video room, a masquerade, a 24-hour hospitality room, your favorite pros, the largest art show ever put together at Archon and much, much more. Similarly, petitioner's panel discussions contained a predominantly recreational tone, e.g., "How to Enjoy Your First Science Fiction Convention," "Buying and Selling Science Fiction," "What's So Horrible About Horror," and "I'm Doing This for Ego-boo?!!" (a discussion on hom to start a science fiction fan magazine). Other convention activities also contained a predominantly social and recreational tone. At the 1980 convention, activities included a masquerade party, a pool party, a sing-a-long program, a 24-hour video room, a 24-hour gaming room, and movies.The 1981 convention dropped the pool party (which petitioner has conceded is unrelated to a tax exempt purpose), added a "dead-dog" party, and retained most of the other social functions. Even some of the films shown by petitioner (although others are arguably science fiction classics, e.g., "2001: A Space Odyssey") appear to be lacking in educational value, e.g., "Hardware Wars" (a spoof on "Star *483 Wars"), "'Star Trek' Bloopers," and "Moon Zero Two" (described in the 1980 convention program as "'the first Outer Space Western'; . . . and hopefully the last"). Accordingly, although petitioner's conventions may have provided some educational benefit to the individuals involved, the predominance of social and recreational purposes compels us to conclude that petitioner has failed to establish that it is operated exclusively for educational purposes. See North American Sequential Sweepstakes v. Commissioner,77 T.C. 1087 (1981); Minnesota Kingsmen Chess Association, Inc. v. Commissioner,T.C. Memo. 1983-495. Moreover, we also agree with respondent that there is additional support for denying petitioner tax-exempt status. Petitioner's huckster's room and art auction provide substantial benefit to private interests. See Sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs. Revenues to private artists at the 1980 convention amounted to $2,376.41. In 1981 the artists earned $2,818.35 and in 1982, they earned $4,800. We have no figures as to the amounts earned by individuals in the huckster's room but we know that about *484 50 tables were rented in 1980, and 75 in 1981. This Court has held previously that tax-exempt status is to be denied to organizations that substantially benefit private rather than public interests. Sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs.; Ecclesiastical Order of the ISM of Am, Inc. v. Commissioner,80 T.C. 833 (1983), affd. without published opinion 740 F.2d 967 (6th Cir. 1984); Christian Stewardship Assistance, Inc. v. Commissioner70 T.C. 1037 (1978). Petitioner relies heavily upon Goldsboro Art League, Inc. v. Commissioner,75 T.C. 337 (1980), in support of its contention that it is tax-exempt. In Goldsboro Art League, the taxpayer was an organization that operated two art galleries that exhibited and sold artworks. We held that the taxpayer was tax-exempt under section 501(c)(3) because it was organized and operated exclusively for an exempt purpose--art education.We noted that in order to insure artistic quality and integrity, the artworks displayed were selected by jury *485 procedures. We also noted that the taxpayer was the only such museum or gallery within its county, or any contiguous county. We held that it served public, rather than private interests and that its sales activities were incidental to advancing its exempt purpose. By contrast, petitioner in this case did not apply any controls to insure the quality of the books and artworks sold at its convention. Also, the tone of petitioner's convention is substantially, if not predominantly, social and recreational, rather than educational. In addition, petitioner's huckster's room and art auction provided substantial benefit to private interests that is not incidental to its exempt purpose. Consequently, we think the case Goldsboro Art League is clearly distinguishable on its facts from the instant case. Accordingly, we hold that petitioner fails to satisfy the operational test of section 1.501(e)(3)-1(c), Income Tax Regs., and therefore does not qualify for exemption from Federal income tax under section 501(a) as an organization described in section 501(c)(3). Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in question. ↩
2. Sec. 7428, which provides for this judicial relief, sets forth the prerequisites for declaratory judgment. Petitioner is the organization whose qualification is at issue, sec. 7428(b)(1); petitioner exhausted its administrative remedies, sec. 7428(b)(2); and petitioner filed its petition before the 91st day after respondent mailed his determination, sec. 7428(b)(3).↩
3. All rule references are to the Tax Court Rules of Practice and Procedure.↩
4. Petitioner has conceded that the pool party is unrelated to a tax-exempt purpose. ↩
5. In the huckster's room, petitioner rents out tables to convention attendees who then sell books and other items concerning science fiction. The cost for renting the tables is $15 for the first table, $20 for the second, and $30 for the third. About 50 tables were rented in 1980, and 75 tables were rented in 1981.↩
6. Petitioner notes that these figures overstate net revenues for the art show and huckster tables since the revenue has not been reduced by expenses for return of art work by mail and monies paid to the hotel for the space and tables used. ↩
7. This figure does not include additional expenses of: program books
$1,233.78
postage
379.07
stationery, etc.
218.32
guest expenses
1,559.24
brunch
1,302.27
hospitality
1,685.83
programming
2,415.14
video room
125.00
art show
2,668.76
HQ/VIP room
97.26
miscellaneous
648.30
Total
$12,322.97
The inclusion of these amounts has no effect upon our determination.↩
8. The 1981 convention program read, in part, as follows: This year at Archon there is something for everyone: expanded gaming facilities with numerous tournaments, a huge movie room, two video screens in the video room, a masquerade, a 24-hour hospitality room, your favorite pros, the largest art show ever put together at Archon and much, much more. ↩
9. Based upon the record, we assume that a "dead dog" party is a social hour. ↩
10. This figure does not include additional expenses of: program books
$ 1,653.39
postage
558.24
stationery, etc.
280.55
guest expenses
1,768.53
volunteer brunch
798.97
hospitality
2,123.20
programming
3,069.70
video room
39.64
art show
3,992.81
HQ/VIP room
224.82
miscellaneous
507.71
Total
$15,017.56
The inclusion of these amounts has no effect upon our determination.↩